No. 22-1848

IN THE

# United States Court of Appeals for the Eighth Circuit

CHRIS COLLINS, ET AL.,
*Plaintiffs-Appellees*,

*v.*

THE DOE RUN RESOURCES CORP., ET AL.,
*Defendants-Appellants.*

On Appeal from the United States District Court for the Eastern District of Missouri
No. 4:15-cv-01704-RWS, Hon. Rodney W. Sippel

# OPENING BRIEF FOR DEFENDANTS-APPELLANTS


Robert M. Loeb
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

E. Joshua Rosenkranz
Alyssa Barnard-Yanni
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

*Counsel for Defendants-Appellants*


(Additional counsel listed on inside cover)

Edward L. Dowd, Jr.
Jeffrey R. Hoops
DOWD BENNETT LLP
7733 Forsyth Blvd
Suite 1900
St. Louis, MO 63105
(314) 889-7300

*Counsel for Defendant-Appellant The Renco Group, Inc.*

Thomas P. Berra, Jr.
Michael J. Hickey
LEWIS RICE LLC
600 Washington Avenue
Suite 2500
St. Louis, MO 63101
(314) 444-7600

*Counsel for Defendant-Appellant The Doe Run Resources Corporation*

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

When Defendants learned of an effort in Peru to fraudulently recruit plaintiffs and falsify documents for this litigation, they retained a criminal lawyer in Peru to advise on Peruvian law and bring the fraud to the attention of Peruvian authorities. Under Peruvian law, that lawyer has a right to attend witness interviews conducted by Peruvian law enforcement authorities. The district court enjoined Peruvian counsel from exercising this right as to interviews with current plaintiffs to this litigation on the asserted ground that doing so would violate Missouri Rule of Professional Conduct Rule 4-4.2.

The district court's order is legally erroneous. Peruvian counsel, the target of the court's order, is not subject to the Missouri Rules, as he is not admitted or providing legal services in Missouri. And Rule 4-4.2 would not bar his attendance at witness interviews because (1) he was not retained to represent Defendants in this civil litigation and is not an agent of lawyers who were so retained; (2) when he passively attends witness interviews, he is not engaged in "communication" prohibited by Rule 4-4.2; and (3) such attendance is expressly authorized by law.

Defendants-Appellants request 20 minutes for oral argument.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, The Renco Group, Inc. hereby states that it has no parent corporation and that no publicly traded company owns more than 10% of its stock.

Pursuant to Federal Rule of Appellate Procedure 26.1, The Doe Run Resources Corporation hereby states that its parent corporation is DR Acquisition Corporation, which is in turn owned by The Renco Group, Inc. No publicly traded company owns more than 10% of its stock.

## TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT .......... i

CORPORATE DISCLOSURE STATEMENT .......... ii

TABLE OF AUTHORITIES .......... v

JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF ISSUES .......... 2

STATEMENT OF THE CASE .......... 3

Thousands of Peruvian nationals file suit in Missouri alleging injury from smelting facility emissions in Peru .......... 3

Defendants uncover a scheme in Peru to fraudulently recruit plaintiffs and falsify documents for this litigation and bring it to the attention of the district court .......... 5

Defendants hire counsel in Peru to bring the fraud to the attention of Peruvian authorities, who begin a criminal investigation .......... 9

The district court enjoins Peruvian counsel from attending certain law enforcement witness interviews in Peru .......... 11

SUMMARY OF ARGUMENT .......... 15

ARGUMENT .......... 17

I. Missouri Rule Of Professional Conduct 4-4.2 Does Not Apply To Peruvian Counsel. .......... 19

A. Rule 4-4.2 does not apply to Peruvian counsel directly .......... 20

1. None of the Missouri Rules of Professional Conduct apply directly to Peruvian counsel because he is not providing legal services in Missouri .......... 20

2. Rule 4-4.2 does not apply directly to Peruvian counsel because he does not represent Defendants in this matter.................................23

B. Rule 4-4.2 does not apply to Peruvian counsel indirectly. ..................................................................31

1. Rule 4-4.2 does not apply to Peruvian counsel indirectly as an agent of Defendants..................31

2. Rule 4-4.2 does not apply to Peruvian counsel indirectly as an agent of counsel retained to represent Defendants in this civil litigation. .....33

II. Missouri Rule Of Professional Conduct 4-4.2, If Applicable, Does Not Bar Peruvian Counsel From Attending The Witness Interviews In Question...................35

A. Attending witness interviews does not entail any "communication" prohibited by Rule 4-4.2..................35

B. The claimed communications at issue here are "authorized by law" and thus permitted by Rule 4-4.2. ..........................................................................37

CONCLUSION ..........................................................................40

CERTIFICATE OF COMPLIANCE.......................................................41

CERTIFICATE OF SERVICE...............................................................42

ADDENDUM

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cochise Consultancy, Inc. v. United States, ex rel. Hunt*,
139 S. Ct. 1507 (2019) ........ 23

*CSX Transp., Inc. v. Gilkison*,
No. 5:05CV202, 2011 WL 5445114
(N.D.W. Va. Nov. 9, 2011) ........ 24, 25, 26, 28, 29

*EEOC v. McDonnell Douglas Corp.*,
948 F. Supp. 54 (E.D. Mo. 1996) ........ 32

*U.S. ex rel. Eisenstein v. City of N.Y.*,
556 U.S. 928 (2009) ........ 27

*Farias Matos v. Bus. L. Grp., P.A.*,
No. 6:18-CV-1105, 2021 WL 4312593
(M.D. Fla. Aug. 18, 2021) ........ 33

*In re Fed. Skywalk Cases*,
680 F.2d 1175 (8th Cir. 1982) ........ 1

*Gen. Motors Corp. v. Harry Brown's, LLC*,
563 F.3d 312 (8th Cir. 2009) ........ 18

*Jones v. Sci. Colors, Inc.*,
201 F. Supp. 2d 820 (N.D. Ill. 2001) ........ 32

*Midwest Motor Sports v. Arctic Cat Sales, Inc.*,
347 F.3d 693 (8th Cir. 2003) ........ 34

*In re Mims v. Chichester*,
281 A.D.2d 256 (N.Y. App. Div. 2001) ........ 28, 30

*Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs*,
488 F. Supp. 2d 22 (D.N.H. 2007) ........ 32

*U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*,
132 F.3d 1252 (8th Cir. 1998) .......... 27

*People v. Santiago*,
925 N.E.2d 1122 (Ill. 2010) .......... 2, 24, 25, 26, 28, 29

*Quackenbush v. Allstate Ins.*,
517 U.S. 706 (1996) .......... 2

*RJR Nabisco, Inc. v. Eur. Cmty.*,
579 U.S. 325 (2016) .......... 21

*Rositzky v. Rositzky*,
46 S.W.2d 591 (Mo. 1931) .......... 21

*Smith v. Kansas City S. Ry.*,
87 S.W.3d 266 (Mo. Ct. App. 2002) .......... 18

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004) .......... 29

*State v. Miller*,
600 N.W.2d 457 (Minn. 1999) .......... 38, 40

*Tuttle v. Dobbs Tire & Auto Centers, Inc.*,
590 S.W.3d 307 (Mo. 2019) .......... 21

*United States v. Gonzalez-Lopez*,
399 F.3d 924 (8th Cir. 2005) .......... 2, 24, 28

*United States v. Gonzalez-Lopez*,
403 F.3d 558 (8th Cir. 2005) .......... 2, 18, 24, 25, 28, 31

*United States v. Plumley*,
207 F.3d 1086 (8th Cir. 2000) .......... 38

**Statutes**

28 U.S.C. § 1291 .......... 1

28 U.S.C. § 1331 .......... 1

**Other Authorities**

ABA Comm. on Ethics & Pro. Resp., Formal Op. 396 (1995)................34

E.D. Mo. Local Rule 12.02................................................................ 18, 21

Mo. Rules of Pro. Conduct 4-1.9(a)(1) ..................................................28

Mo. Rules of Pro. Conduct 4-1.10(b)(1) ................................................29

Mo. Rules of Pro. Conduct 4-4.2....................18, 23, 24, 28, 31, 32, 34, 37

Mo. Rules of Pro. Conduct 4-5.5............................................................22

Mo. Rules of Pro. Conduct 4-8.5............................................................23

Mo. Bar. Ass'n Advisory Ethics Op. No. 20030061,
https://tinyurl.com/29rrrmd6............................................................36

Mo. Bar Ass’n Ethics Advisory Op. No. 960167,
https://tinyurl.com/29rrrmd6............................................................23

North Carolina State Bar Ass’n 2003 Formal Ethics Op. 4,
2003 WL 24306943 ..........................................................................36

## JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of Missouri had jurisdiction under 28 U.S.C. § 1331. The order appealed from was entered on March 24, 2022. A notice of appeal was timely filed on April 20, 2022.

This Court has jurisdiction under 28 U.S.C. § 1292(a)(1), as well as 28 U.S.C. § 1291. Section 1292(a)(1) permits appeals from injunctive orders. The March 24 order, while framed as granting "Plaintiffs' emergency motion for a protective order," enjoins Defendants' Peruvian counsel from participating in legal proceedings in Peru—namely, attending law enforcement witness interviews that Peruvian law entitles him to attend. *See In re Fed. Skywalk Cases*, 680 F.2d 1175, 1180 (8th Cir. 1982) ("The determination of whether an order is an injunction depends upon the substantial effect of the order rather than its terminology."). Indeed, that is precisely what Plaintiffs asked for—an order "*prohibiting*" Peruvian counsel's attendance at those interviews. App.105; R. Doc. 607, at 1 (emphasis added).

This Court also has jurisdiction pursuant to § 1291, as the order is considered final under the collateral order doctrine. The doctrine

applies here because the March 24 order was based on grounds unrelated to the merits of this suit, and it is unreviewable on appeal from final judgment. *See Quackenbush v. Allstate Ins.*, 517 U.S. 706, 712 (1996).

## STATEMENT OF ISSUES

Whether the district court erred when it issued an order enjoining Defendants' Peruvian counsel (who does not represent Defendants in this matter and is neither admitted to practice in Missouri nor providing any legal services in Missouri) from attending certain witness interviews in Peru on the ground that such attendance would violate Missouri Rule of Professional Conduct 4-4.2?

**Relevant Cases**

*United States v. Gonzalez-Lopez*, 399 F.3d 924 (8th Cir. 2005)

*United States v. Gonzalez-Lopez*, 403 F.3d 558 (8th Cir. 2005)

*People v. Santiago*, 925 N.E.2d 1122 (Ill. 2010)

## STATEMENT OF THE CASE

### *Thousands of Peruvian nationals file suit in Missouri alleging injury from smelting facility emissions in Peru*

In the 1990s, the Peruvian government owned and operated a smelting facility in La Oroya, Peru. R. Doc. 137-4, at 3, 17.[1] In previous decades, the Peruvian government and prior owners of the facility had done little to contain emissions from the facility and prevent environmental contamination in the surrounding area. R. Doc. 137-4, at 19-20. The government sought to privatize the facility and solicited investors willing to clean up the area and modernize the facility. R. Doc. 242-11, at 2. No one was interested, mainly because a new owner could face legal liability based on pre-existing contamination. R. Doc. 242-11, at 2-3. The Peruvian government needed to overcome that reticence and incentivize investors to buy the facility and fund cleanup operations. To that end, Peru promised immunity from liability for

[1] Record citation numbering (*e.g.*, 137-4) corresponds to the docket entry number for the document, which does not always match the exhibit number. For documents originally filed under seal in the district court (which have since been unsealed, subject to limited redactions), the cited pagination is the internal document pagination. For documents not filed under seal in the district court, the cited pagination is the ECF pagination at the top of the page of the public filing.

preexisting contamination, as well as contamination during the cleanup period, as long as government-specified standards were met. R. Doc. 137-9, at 10-11. Relying on this promise, The Renco Group, Inc. and its subsidiary The Doe Run Resources Corporation (Defendants here) began negotiations with Peru. Peru would only enter into an agreement with a Peruvian company, so the U.S. entities formed a new subsidiary, Doe Run Peru, S.R.L. ("Doe Run Peru"). R. Doc. 137-9, at 2. In 1997, Peru transferred ownership of the La Oroya facility to Doe Run Peru. R. Doc. 137-9, at 2, 25.

Starting in 2007, U.S.-based plaintiffs' lawyers filed lawsuits on behalf of thousands of Peruvian citizens alleging injury from environmental contamination in La Oroya. They brought these suits in Missouri state court against The Renco Group and The Doe Run Resources Corporation (but not Doe Run Peru). *E.g.*, R. Doc. 18. Defendants removed the cases to federal court, R. Doc. 1, where many are consolidated for pre-trial matters, R. Doc. 53.

The government of Peru has repeatedly objected to this litigation proceeding in the United States rather than Peru, and Defendants moved to dismiss these cases on international comity grounds. *E.g.*, R.

Doc. 137. As the La Oroya facility is located in Peru and owned and operated by a Peruvian entity (Doe Run Peru), and Plaintiffs are Peruvian citizens located in Peru who allegedly suffered injury in Peru as a result of environmental contamination in Peru, Defendants argued that Plaintiffs were improperly seeking to have a U.S. court second-guess Peruvian environmental standards and that the claims should be dismissed. *Id.* In the alternative, Defendants asked the district court to at least apply Peruvian law to the dispute. R. Doc. 255. The district court refused both requests, erroneously insisting on applying Missouri tort law to the operation of the La Oroya facility. R. Doc. 296. Proceedings have been ongoing for many years.

***Defendants uncover a scheme in Peru to fraudulently recruit plaintiffs and falsify documents for this litigation and bring it to the attention of the district court***

Defendants were approached by whistleblowers disclosing a fraudulent scheme in Peru to recruit plaintiffs and fabricate documents for this litigation. App.5; R. Doc. 542-2, at 1. Upon hearing this, Defendants hired investigative counsel, separate from counsel representing Defendants in this litigation, to conduct an investigation into the events in Peru. App.5-6; R. Doc. 542-2, at 1-2. They produced a

detailed report documenting abuses collected from three primary sources: two individuals who worked in Peru recruiting plaintiffs and collecting documents, and one mother of two former plaintiffs dismissed with prejudice from this case, whose children were included as plaintiffs in this matter without her knowledge or consent. *See generally* App.5-25; R. Doc. 542-2. All three individuals executed sworn statements, which were accompanied by corroborating evidence.

In their sworn statements and corroborating materials, the two whistleblower recruiters provided a detailed account of their extensive document falsification. They explained how they used fake government stamps and seals to create the impression that a forged document had been issued by the appropriate official authority. App.11-12; R. Doc. 542-2, at 7-8. They detailed how they forged signatures, App.14-17; R. Doc. 542-2, at 10-13, purchased fake notary stamps, App.18; R. Doc. 542-2, at 14, paid real notaries to attest to forged signatures on falsified documents, App.19; R. Doc. 542-2, at 15, illicitly procured blank official forms, App.19-20; R. Doc. 542-2, at 15-16, and altered old government records, App.21-22; R. Doc. 542-2, at 17-18. And they provided specific examples of falsified documents in the foregoing categories that were

later then produced in this litigation or related litigation. *See* App.10-22; R. Doc. 542-2, at 6-18.

In addition, and often related to this documentary fraud, the whistleblower recruiters explained how they were involved in fraudulently enrolling and recruiting plaintiffs for this litigation. In some cases, the recruiters tricked parents into signing litigation documents by telling them they were signing up to obtain benefits from government programs like *Vaso de Leche*, which provides milk to families with young children. App.23; R. Doc. 542-2, at 19. In other cases, the recruiters resorted to coercion, telling families they would no longer receive government benefits unless they agreed to join the lawsuit. App.24-25; R. Doc. 542-2, at 20-21. In still other cases, the recruiters simply forged signatures. App.23-24; R. Doc. 542-2, at 19-20.

A mother of two former plaintiffs, in her own sworn statement, corroborated the accounts of the recruiters. She described how four people came to her home in Peru and offered to donate school supplies for her two children. App.26-27; R. Doc. 542-5, ¶ 6. She was asked to read and sign documents (in Spanish) at that time; those documents made no reference to any legal actions. *Id.* When she went to pick up

the school supplies, she was told her children needed to undergo blood testing to evaluate lead levels. App.27; R. Doc. 542-5, ¶ 7. The location was dirty and did not appear to have sterilized medical instruments for taking blood samples, so she refused to allow the blood work. *Id.* She never received school supplies for her children. *Id.* Eventually, she learned that her children had been named as plaintiffs in the U.S. legal action, but she refused to participate in meetings or sign any lawsuit-related documents, as had never agreed to sue Defendants. App.27-28; R. Doc. 542-5, ¶¶ 8-10. Later, her children's claims were eventually dismissed with prejudice. App.5-6; R. Doc. 542-2, at 1-2. When presented with the paperwork used to sign up her children for the suit, she attested that she never signed the documents, and that the signatures and fingerprints had been falsified. App.28-30; R. Doc. 542-5, ¶¶ 11-15.

Defendants advised the district court in this case and a related case of the fraud uncovered in Peru, filing the report under seal to protect the whistleblowers and requesting a joint status conference before both judges to determine how to proceed. App.1-2; R. Doc. 542-1.

At a status conference held in this case,[2] Plaintiffs' counsel admitted "that there were some issues with some documents," particularly "medical records." App.81-82; R. Doc. 553, at 17:20, 18:5-6. And Defendants were able to identify additional falsified documents in the production as well—for example, documents where supposed notarization stamps were dated months before or after the signature date, and documents purporting to be from the same plaintiff but containing serious discrepancies in biographical information or medical records. App.155-57; R. Doc. 618, at 18:9-20:23.

***Defendants hire counsel in Peru to bring the fraud to the attention of Peruvian authorities, who begin a criminal investigation***

In addition to raising the issue with the district court to determine how the fraud being perpetrated in Peru would affect this litigation, Defendants also "retained criminal counsel in Peru to advise on issues of Peruvian law" and to bring the evidence of fraud being committed in Peru "to the attention of local law enforcement." App.6, 204; R. Doc. 542-2, at 2; R. Doc. 625-1, at 1. The Peruvian attorney in question

---

[2] The district court in the related case, No. 11-CV-44 (E.D. Mo.), never responded to Defendants' motion.

(hereinafter "Peruvian counsel") was not retained to represent, and is not representing, Defendants in this civil litigation. App.205; R. Doc. 625-1, at 2. Nor does he report to or take orders from the attorneys retained to represent Defendants in this civil litigation. *Id*.

Under Peruvian law, an individual who believes that they were the victim of a crime may present a "*denuncia*," or complaint, to the authorities. *See* App.115, 118; R. Doc. 607-1, ¶ 3(a)-(b). As with criminal investigations in the United States, Peruvian prosecutors make their own decision on whether to conduct an investigation and how to proceed with an investigation. *See* App.118, 135; R. Doc. 607-1, ¶ 3(a)-(b); R. Doc. 607-2, at 9. There, as here, the complainant (or "*denunciante*") can suggest witnesses who may have relevant information, but the prosecutor decides whom to interview. *See* App.119, 135-36; R. Doc. 607-1, ¶ 3(e); R. Doc 607-2, at 9-10. Peruvian law differs, however, in that when the prosecutor interviews witnesses, the complainant has the right to attend those interviews. App.119; R. Doc. 607-1, ¶ 3(f).

The Peruvian criminal investigation here followed that standard process. The prosecutor initiated an investigation after Peruvian

counsel filed his *denuncia*. App.6, 115, 118-19; R. Doc. 542-2, at 2; R. Doc. 607-1, ¶ 3(a)-(g). Peruvian law enforcement scheduled interviews with a number of witnesses. App.136-38; R. Doc. 607-2, at 10-13. As is his right under Peruvian law, Peruvian counsel was authorized to attend any witness interviewed they conducted. App.119; R. Doc. 607-1, ¶ 3(f).

***The district court enjoins Peruvian counsel from attending certain law enforcement witness interviews in Peru***

On March 22, 2022, Plaintiffs filed an "emergency" motion asserting that Peruvian authorities were planning to interview "eleven … Plaintiffs represented by [Plaintiffs' counsel] before this Court," as well as some of the parents of those Plaintiffs. App.108-09; R. Doc. 607, at 4-5. Citing Rule 4-4.2 of the Missouri Rules of Professional Conduct, Plaintiffs called what they were seeking a "protective order," but in reality they sought an order "prohibiting" (i.e., enjoining) Peruvian counsel from attending interviews he indisputably had a right to attend under Peruvian law, claiming it would be an impermissible *ex parte* communication in violation of the Rule. App.108-13; R. Doc. 607, at 4-8.

Less than 48 hours after Plaintiffs' motion was filed, the district court held a scheduled hearing on other, fully briefed motions. R. Doc.

581. At that hearing, Defendants twice informed the court that Defendants planned to file a written response to Plaintiffs' emergency motion. Add. 5, 9; R. Doc. 618, at 11:2-7, 22:2-5.[3] In addition, Defendants offered to "address [the new emergency motion] today if Your Honor would like." Add. 5; R. Doc. 618, at 11:2-5. Because the court invited no oral response and did not suggest it was deciding the emergency motion that day, Defendants' counsel limited himself to correcting one factual misrepresentation made by Plaintiffs' counsel: In response to Plaintiffs' contention that Peruvian authorities were interviewing *current* plaintiffs in the litigation, counsel stated: "[A]ll of the people who are being interviewed down in Peru by the prosecutor have been dismissed with prejudice from these cases." Add. 5; R. Doc. 618, at 11:10-12. On that specific factual issue, Plaintiffs' counsel maintained their position that "some of [their] clients" were on the interview list. Add. 11; R. Doc. 618, at 52:7-9.

The court never said it was planning to decide the emergency motion without first receiving a written response from Defendants and

[3] The cited excerpts from the transcript are included in the Addendum to the Opening Brief. The complete transcript can be found in the Appellants' Appendix at App.140-203.

never asked Defendants' counsel to orally address the merits of Plaintiffs' motion. To the contrary, the court stated that it "just wanted to focus on the [planned subject for the hearing] right now." Add. 12; R. Doc. 618, at 53:4-5. After a recess, however, with no warning, the court ruled on the motion:

> I'm a little concerned about the difference in the understanding of who is being interviewed in Peru by the prosecutor. I had great relief, [Defendants' counsel], when you told me the only people they were talking to were those who had been dismissed with prejudice from this case. That's none of my business. To the extent that there are, advertently or inadvertently, people who are current plaintiffs and clients, obviously your counsel and any of your agents cannot participate in their interviews. That would be an inappropriate *ex parte* communication.

Add. 13; R. Doc. 618, at 57:15-25.

Upon hearing this unexpected immediate oral ruling, Defendants' counsel asked to be heard. Add. 14; R. Doc. 618, at 58:1. He began by reiterating that the witnesses being interviewed by Peruvian law enforcement were all, to date, *former* plaintiffs—those dismissed with prejudice. Add. 14; R. Doc. 618, at 58:4-5. The court interrupted: "Obviously, you know, you can't have *ex parte* communication with his client." Add. 14; R. Doc. 618, at 58:10-11. Defendants' counsel began to push back, stating "I'm not sure if those ethical rules apply directly to a

lawyer—." Add. 14; R. Doc. 618, at 58:13-14. The court then stopped counsel midsentence: "Well, they will apply in this courtroom if you have a lawyer or an agent participate in an *ex parte* interview. That's all I'm saying." Add. 14; R. Doc. 618, at 58:15-17. Defendants' counsel tried to explain that Peruvian counsel "can't ask questions" and just "sits there" during law enforcement witness interviews. Add. 14-15; R. Doc. 618, at 58:22-59:2. The court concluded: "If they are an active client, I don't want them in the room when they are interviewed by prosecutors or law enforcement." Add. 15; R. Doc. 618, at 59:4-6.

Later that day, the court entered a written order stating: "Plaintiffs' emergency motion for a protective order [607] is GRANTED as stated on the record." Add. 2; R. Doc. 613, at 2. Because Defendants did not have an opportunity to be heard on Plaintiffs' motion before the Court ruled, they filed a document memorializing the arguments they would have made in opposition to Plaintiffs' motion, had they had the opportunity. *See* R. Doc. 625 (sealed version); R. Doc. 633 (redacted version). They thereafter filed a Notice of Appeal, App.206; R. Doc. 629. Further, Defendants filed a motion for a stay pending appeal, R. Doc. 628 (sealed version); R. Doc. 636 (redacted version), which the district

court denied, Add. 17-19; R. Doc. 650, at 2-4.

## SUMMARY OF ARGUMENT

**I.A.** The district court erred in concluding that Rule 4-4.2 applies to Peruvian counsel. In fact, none of the Missouri Rules of Professional Conduct apply to him. State laws are presumed to have no extraterritorial effect. The Missouri Rules of Professional Conduct reflect this time-honored principle in defining what lawyers are subject to the Rules: those admitted to practice in Missouri and those providing legal services in Missouri. Peruvian counsel does not fall within either category. He is not admitted to practice in Missouri, nor does his representation of Defendants in Peru in connection with a Peruvian criminal investigation constitute providing legal services in Missouri.

At minimum, Rule 4-4.2 does not apply to Peruvian counsel. The Rule prohibits “a lawyer” “representing a client” “in the matter” in which another person is “know[n] to be represented” from communicating with that other person directly. In other words, the Rule bars a lawyer from communicating with a person represented in a matter only if the lawyer represents their client *in that same matter*. Here, the district court enjoined Peruvian counsel from attending

witness interviews with Plaintiffs represented by counsel in this civil litigation. But Peruvian counsel does not represent Defendants in this civil litigation. Accordingly, Rule 4-4.2 does not apply to him, and does not prohibit him from speaking to the parties to this matter.

**I.B.** The foregoing deficiency cannot be remedied by claiming that Rule 4-4.2 applies to Peruvian counsel *indirectly* through Defendants or Defendants' counsel. With respect to Defendants, Rule 4-4.2 applies only to lawyers; it does not apply to parties. It is well established that parties may communicate with each other, even if represented by counsel. And they may do so either directly or through agents. Thus, Peruvian counsel is not bound by Rule 4-4.2 indirectly simply by virtue of his status as Defendants' agent.

As for the attorneys retained to represent Defendants in this civil litigation, Plaintiffs did not argue in their motion that Peruvian counsel was an agent of such attorneys, the district court never found as much, and Defendants submitted a sworn affidavit to the contrary. There is thus no basis for applying Rule 4-4.2 to Peruvian counsel indirectly on the ground that he is an agent of other attorneys subject to Rule 4-4.2.

**II.A.** Even if Rule 4-4.2 applied to Peruvian counsel, it would not bar the conduct enjoined by the district court. The court's order bars Peruvian counsel from passively attending witness interviews—he is prohibited from so much as being "in the room." But Rule 4-4.2 bars a lawyer from *communicating* with represented persons. Simply being in the presence of a represented person—i.e., attending a witness interview—is not a prohibited communication under the Rule.

**II.B.** Moreover, Rule 4-4.2 expressly exempts from its reach communications authorized by law. Peruvian counsel is authorized by Peruvian law to attend the witness interviews in question. And Peruvian counsel's role in the Peruvian investigative process is analogous to U.S. investigative acts addressed—and approved by—the comments to the Rule interpreting this exception.

## ARGUMENT

Plaintiffs and the district court cited only one basis for prohibiting Peruvian counsel from attending witness interviews conducted in Peru by Peruvian law enforcement: Rule 4-4.2 of the Missouri Rules of

Professional Conduct.[4] *See* Add. 13, 18; App.109-11; R. Doc. 607, at 5-7. That Rule is "essentially identical" to Rule 4.2 of the ABA Model Rules of Professional Responsibility. *Smith v. Kansas City S. Ry.*, 87 S.W.3d 266, 271 (Mo. Ct. App. 2002). It provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Mo. Rules of Pro. Conduct 4-4.2.

This Court "review[s] the district court's factual findings for clear error, its legal conclusions de novo, and its exercise of equitable judgment for abuse of discretion." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 316 (8th Cir. 2009). Without the benefit of adversarial briefing, the district court misconstrued Rule 4-4.2, and the resulting order was legal error. Rule 4-4.2 does not apply to Peruvian counsel, whose conduct was enjoined by the district court. § I. But even if it did, it would not bar him from attending Peruvian law

---

[4] The Missouri Rules of Professional Conduct govern attorney ethics in the Eastern District of Missouri. *See United States v. Gonzalez-Lopez*, 403 F.3d 558, 565 (8th Cir. 2005); E.D. Mo. Local Rule 12.02.

enforcement's witness interviews with current plaintiffs.[5] § II. The district court's order must be vacated.

## I. Missouri Rule Of Professional Conduct 4-4.2 Does Not Apply To Peruvian Counsel.

Plaintiffs never explained *why* Rule 4-4.2 applied to Peruvian counsel. Nor did the district court when it granted Plaintiffs' motion. Even after Defendants had an opportunity to dispute the applicability of Rule 4-4.2 in their stay motion, the district court's order denying a stay simply declared that Defendants' counsel "in Peru" was "[c]learly" bound by Rule 4-4.2, without explaining why. Add. 18; R. Doc. 650, at 3.

There are two possible theories, neither of which justifies the district court's order. The first theory would be that Rule 4-4.2 applies directly to Peruvian counsel. That is contrary to the plain text of the

---

[5] Although Plaintiffs insisted otherwise, *see* App.189; R. Doc. 618, at 52:7-9, Defendants informed the district court at the March 24, 2022 hearing that Peruvian law enforcement had not conducted interviews with any current Plaintiffs. App.148; R. Doc. 618, at 11:9-12; *see also* R. Doc. 646, at 2-3 & n.2. The Peruvian investigation is ongoing, however, and law enforcement officials could potentially schedule interviews with current plaintiffs. The district court's order would bar Peruvian counsel from attending such interviews, causing irreparable harm by permanently depriving Defendants of a right secured by Peruvian law.

provision defining the reach of the Missouri Rules of Professional Conduct and would be an impermissibly extraterritorial application of the Rules to boot. § I.A.1. It is also contrary to the language of Rule 4-4.2 itself. § I.A.2. The second theory would be that Rule 4-4.2 applies to Peruvian counsel indirectly, either because he is acting as an agent of Defendants or because he is acting as an agent of defense counsel. Parties, however, are not subject to Rule 4-4.2 at all (only lawyers are), and so their agents are not indirectly bound by the rule either. § I.B.1. And Plaintiffs did not allege that Peruvian counsel was acting as an agent of counsel retained to represent Defendants in this civil litigation, the district court never found as much, and Defendants submitted sworn evidence to the contrary. § I.B.2. In sum, Rule 4-4.2 cannot be applied to Peruvian counsel.

## A. Rule 4-4.2 does not apply to Peruvian counsel directly.

### 1. None of the Missouri Rules of Professional Conduct apply directly to Peruvian counsel because he is not providing legal services in Missouri.

"[I]t is … settled law and almost axiomatic" that the laws "of a state … prescribe the law within its boundaries only, and have no extraterritorial force or effect." *Rositzky v. Rositzky*, 46 S.W.2d 591, 594

(Mo. 1931); *see Tuttle v. Dobbs Tire & Auto Centers, Inc.*, 590 S.W.3d 307, 311 (Mo. 2019) (similar); *cf. RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 335 (2016) (presumption against extraterritorial application of federal law). Rule 4-8.5(a) of the Missouri Rules of Professional Conduct incorporates this well-established comity principle in detailing the two categories of lawyers subject to the Rules directly: (1) lawyers "admitted to practice in [Missouri]" and (2) lawyers "provid[ing] or offer[ing] to provide any legal services in [Missouri]."[6] Under this standard, for example, the attorneys retained to represent Defendants in this appeal and the underlying district court cases are bound by Rule 4-4.2. *See infra* at 33; *see also* E.D. Mo. Local Rule 12.02 (adopting Missouri Rules of Professional Conduct and specifying that such rules apply to "any attorney appearing in any action in this Court").

Peruvian counsel, however, was not retained to represent, and is not representing, Defendants in this civil litigation. He is a Peruvian criminal lawyer located in Peru. App.6; R. Doc. 542-2, at 2. Peruvian

[6] These two categories of lawyers are also responsible for the actions of certain other individuals under their supervision, although such individuals may not be directly subject to the Rules themselves. *See* Mo. Rules of Pro. Conduct 4-5.1(c), 4-5.3(c); *see also infra* at 33.

counsel is not admitted to practice in Missouri. Thus, the Missouri Rules of Professional Conduct apply to him only if he is "provid[ing] any legal services in" Missouri. He is not.

In construing this language—used in Rule 4-8.5 to define the reach of the Rules of Professional Conduct—this Court should be mindful that the same language is used in Rule 4-5.5 to prohibit the unauthorized practice of law. *See* Rule 4-5.5(c), (d) (describing circumstances in which lawyers not admitted to practice in Missouri may nonetheless "provide legal services" in Missouri). Defendants retained Peruvian counsel, located in Peru, "to advise on issues of Peruvian law and to bring [any evidence of] fraud to the attention of Peruvian law enforcement." App.204; R. Doc. 625-1, at 1. He "was not retained to represent, and is not representing, Defendants in the above-captioned civil litigation." App.205; R. Doc. 625-1, at 2.

Peruvian counsel's representation of Defendants in Peru in connection with a Peruvian law enforcement investigation clearly does not constitute the unauthorized practice of law in Missouri under Rule 4-5.5. It should therefore be equally clear that Peruvian counsel is not "provid[ing] legal services in" Missouri within the meaning of Rule 4-

8.5(a). *Cf. Cochise Consultancy, Inc. v. United States, ex rel. Hunt*, 139 S. Ct. 1507, 1512 (2019) (discussing the "fundamental rule[] of statutory interpretation" that "[i]n all but the most unusual situations, a single use of a statutory phrase must have a fixed meaning" throughout a statute). Accordingly, under Rule 4-8.5(a), none of the Missouri Rules of Professional Conduct—including Rule 4-4.2—apply to him directly.[7]

**2. Rule 4-4.2 does not apply directly to Peruvian counsel because he does not represent Defendants in this matter.**

Setting aside the reach of the Rules as a general matter, Rule 4-4.2 is inapplicable to Peruvian counsel. The Rule prohibits "a lawyer" "representing a client" "in the matter" in which another person is "know[n] to be represented" from communicating with that other person

[7] Even if Peruvian counsel could be viewed as "subject to" the Missouri Rules under Rule 4-8.5(a), *id*. cmt. 2, the choice-of-law provision in Rule 4-8.5(b) would require the application of *Peruvian* rules of professional conduct to his actions in Peru. *See* Rule 4-8.5(b)(1), (2) (conduct *not* "in connection with a matter pending before a tribunal" is governed by "the rules of the jurisdiction in which the lawyer's conduct occurred"); *cf*. Mo. Bar Ass'n Ethics Advisory Op. No. 960167, https://tinyurl.com/29rrrmd6 (where an attorney licensed in Missouri is representing a client pro hac vice in another state, the other's states rules of professional conduct apply to *ex parte* communications with parties to that suit). Plaintiffs have identified no Peruvian rule of professional conduct that would bar Peruvian counsel from attending the witness interviews in question.

directly. *See supra* at 18. As courts interpreting this and similar rules have held, the Rule is not so broad as "to prohibit any attorney" in the world "from speaking to any party represented by counsel in a matter." *United States v. Gonzalez-Lopez*, 399 F.3d 924, 931 (8th Cir. 2005), *aff'd*, 548 U.S. 140 (2006). It is instead a "case specific" rule; the prohibition is "specific to the matter in which the part[ies are] represented." *People v. Santiago*, 925 N.E.2d 1122, 1129 (Ill. 2010) (construing similar Illinois rule ); *see Gonzalez-Lopez*, 403 F.3d at 565 (Rule 4-4.2 is "limited to attorneys who are involved in the matter and does not apply to an attorney not so involved"); *CSX Transp., Inc. v. Gilkison*, No. 5:05CV202, 2011 WL 5445114, at *5 (N.D.W. Va. Nov. 9, 2011) ("Rule 4.2 only applies when the person with whom the lawyer seeks to communicate is represented in the same matter as the matter in which the communicating lawyer is representing his client.").[8]

---

[8] In *CSX Transportation*, the court stated that ABA Rule 4.2 was not "case-specific" in the sense that it is not "limited to cases where suit is filed," meaning the rule is not specific to *litigation*. 2011 WL 5445114, at *6. The court made clear that the rule "applies to all transactions for which lawyers are hired." *Id.* Any distinction between a "case" and a "matter" is not relevant here, as this matter is a litigated case in court.

Both the text and purpose of the rule support a matter-specific reading. The rule "begins with the clause, 'In representing a client,'" which informs "the remainder of the text." *Gonzalez-Lopez*, 403 F.3d at 565. Similarly, the phrase "the matter" "refer[s] back to the phrase" "representing a client." *Santiago*, 925 N.E.2d at 1129. And one of the primary purposes of the rule "is to 'protect a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers *who are participating in the matter*." *Gonzalez-Lopez*, 403 F.3d at 565 (quoting ABA Model Rules of Pro. Conduct R. 4.2 cmt. 1) (emphasis in original, alterations omitted).

Taken together, Rule 4-4.2 applies—and prohibits a lawyer from directly communicating with a represented person—only where there is "an attorney-client relationship" between the client and the attorney "with respect to the matter at issue." *Santiago*, 925 N.E.2d at 1130. In other words, the Rule bars a lawyer from communicating with a person represented in a matter only if the lawyer represents their client "*in the same matter*." *CSX Transp.*, 2011 WL 5445114, at *5 (emphasis added).

Plaintiffs argued below that Rule 4-4.2 applies and bars Peruvian counsel from communicating with "Plaintiffs represented by [Plaintiffs'

counsel] before this Court." App.108-09; R. Doc. 607, at 4-5; *see also* App.109-11; R. Doc. 607, at 5-7 (discussing "represented Plaintiffs"). In other words, Plaintiffs invoked *this civil litigation* as "the matter" in which they are representing Plaintiffs and which gives rise to any obligation under Rule 4-4.2. But Plaintiffs have not alleged, and the district court did not find, that Peruvian counsel is representing Defendants *in this civil litigation*. *See* App.110; R. Doc. 607 at 6; Add. 16; R. Doc. 650 at 2-4. Indeed, Defendants submitted a sworn, uncontroverted affidavit stating the contrary: Peruvian counsel—a Peruvian criminal lawyer—is representing Defendants in connection with the ongoing criminal investigation in Peru, not in this civil case. App.205; R. Doc. 625-1 at 2.

Because Peruvian counsel does not represent Defendants in this matter, Rule 4-4.2 does not apply, and therefore does not prohibit him from speaking to the parties in this matter, whether they are represented or not. *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252 (8th Cir. 1998), which Plaintiffs cited below, is not to the contrary. There, the federal government intervened in a qui tam action under the False Claims Act, thereby becoming a party to the suit. *Id.* at

1253; *U.S. ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928, 931 (2009). After becoming a party, attorneys who were representing the United States in that specific matter began their "pretrial investigation," which involved *ex parte* interviews with the parties (conducted by the attorneys' agents). *O'Keefe*, 132 F.3d at 1253. *O'Keefe* stands for the unremarkable proposition that, after the United States became a party to the suit, attorneys representing the United States in that False Act Claim suit could not engage in *ex parte* communications with other parties to that suit, either directly or through an agent. It did *not* hold that all attorneys representing the United States in every matter throughout the country (or indeed the world) were prohibited from contacting the parties to that specific False Claims Act suit. *Cf. Gonzalez-Lopez*, 399 F.3d at 931. The prohibition was instead limited to lawyers in the qui tam action. Similarly, here, Rule 4-4.2 does not bar Peruvian counsel, who is not involved in this matter, from communicating with Plaintiffs. *Gonzalez-Lopez*, 403 F.3d at 565.

The district court, in denying Defendants' stay motion, suggested yet another justification for applying Rule 4-4.2 to Peruvian counsel: In its view, although Peruvian counsel is not representing Defendants in

*this* matter, the investigation in Peru in which Peruvian counsel is representing Defendants is "inextricably intertwined with the … issues before this Court in this matter." Add. 19; R. Doc. 650 at 4. In other words, the matters, while not the same, are related and involve similar issues.

Courts interpreting rules analogous to Rule 4-4.2 have explicitly rejected this type of reasoning. *See, e.g., Santiago*, 925 N.E.2d at 1129-30 (collecting cases); *CSX Transp.*, 2011 WL 5445114, at *5; *In re Mims v. Chichester*, 281 A.D.2d 256, 257 (N.Y. App. Div. 2001). Rule 4-4.2 uses the phrase "*the* matter" to define the scope of the ban on *ex parte* communication. Other rules in the Missouri Rules of Professional Conduct use broader language. Rule 4-1.9(a)(1), for example, prohibits a lawyer who "formerly represented a client in a matter" from "represent[ing] another person in the same *or a substantially related* matter." (emphasis added). Rule 4-1.10(b)(1) also uses the "same or substantially related" formulation. "[T]he usual rule," of course, is that when a law "uses certain language in one part … and different language in another, the court assumes different meanings were intended." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 n.9 (2004) (quoting 2A N. Singer,

Statutes and Statutory Construction § 46:06, p. 194 (6th rev. ed. 2000)). Because the drafters of Rule 4-4.2 "did not include the words … 'same or a substantially related' matter in the rule," but saw fit to use the broader phrase elsewhere, this Court should "presume that the omission was deliberate," and give different meaning to different language. *Santiago*, 925 N.E.2d at 1130.

Thus, Rule 4-4.2's prohibition on *ex parte* communication prohibits a lawyer from communicating with a person represented in a matter only if the lawyer in question represents the client *in that same matter*. *See supra* at 23-25. The prohibition does not bar communications with persons represented in one matter where the lawyer represents their client in a different matter (even if related). *Santiago*, 925 N.E.2d at 1129-30 (child protection case and criminal prosecution arising from same incident of alleged abuse were not the same matter under analogous Illinois rule); *CSX Transp.*, 2011 WL 5445114, at *5 (plaintiffs' asbestos-related injury claims and defendants' "claims for common law fraud and conspiracy" against plaintiffs' lawyers, while "similar in the sense that they may involve" the same facts, were "different matters within the meaning of Rule 4.2"); *Mims*, 281 A.D.2d

at 257 ("While [a] criminal prosecution and [a Freedom of Information Law] request [for records related to the indictment] may involve the same 'subjects,' they are clearly different 'matters' within the meaning of the [relevant New York ethical] rule."). *Id.*[9]

Plaintiffs' accusations that Defendants are illicitly circumventing Rule 4-4.2, *see* Add. 18; R. Doc. 650, at 3, are unfounded. Peruvian counsel is representing Defendants in connection with a separate, bona fide matter: an ongoing Peruvian criminal investigation of fraud being committed in Peru. *See supra* at 9-11. Although a lawyer may represent a client in multiple matters, Defendants have submitted a sworn declaration that Peruvian counsel is *not* representing Defendants in this matter. *See supra* at 9-10; App.204-05; R. Doc. 625-1, at 1-2.

On the facts here, it is clear that Peruvian counsel is not serving as counsel in the matter or otherwise representing Defendants in this

[9] It is unclear whether any plaintiffs are represented by counsel in connection with the Peruvian criminal investigation in which Peruvian counsel represents Defendants. Even assuming that they are, however, Peruvian rules of professional responsibility—not Rule 4-4.2—would govern the permissibly of any communication. *See supra* at 23 n.7. No one argues that Peruvian counsel's contact with Plaintiffs would violate any Peruvian rule of professional conduct.

matter in *any* capacity. Rule 4-4.2 therefore does not apply to him directly.

### B. Rule 4-4.2 does not apply to Peruvian counsel indirectly.

Not only is Rule 4-4.2 inapplicable to Peruvian counsel directly, but there is no basis for applying the Rule to him indirectly.

#### 1. Rule 4-4.2 does not apply to Peruvian counsel indirectly as an agent of Defendants.

Plaintiffs have suggested at times that Defendants themselves were bound by Rule 4-4.2, and were therefore barred from communicating with individual plaintiffs "directly or indirectly" (i.e., through an agent like Peruvian counsel). App.105, 111-12; R. Doc. 607, at 1, 7-8. That is "plainly wrong." *Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs*, 488 F. Supp. 2d 22, 28 (D.N.H. 2007) (interpreting analogous New Hampshire rule).

Rule 4-4.2, on its face, applies only to "a lawyer" "representing a client." Its application is "limited to attorneys." *Gonzalez-Lopez*, 403 F.3d at 565. It has no application to the client or the client's actions, and therefore does not bar the attorney's client from contacting their counterpart on the other side of a matter. Comment 4 to Rule 4-4.2

makes that explicit: "Parties to a matter may communicate directly with each other, and a lawyer is not prohibited from advising a client concerning a communication that the client is legally entitled to make." *See also EEOC v. McDonnell Douglas Corp.*, 948 F. Supp. 54, 55 (E.D. Mo. 1996) ("[N]othing … prohibits one party to a litigation from making direct contact with another party to the same litigation.").

Moreover, parties are not limited to *direct* contact with one another. They may communicate with each other through agents or representatives. *See, e.g.*, *Jones v. Sci. Colors, Inc.*, 201 F. Supp. 2d 820, 829 (N.D. Ill. 2001) (quoting Restatement (3rd) of Law Governing Lawyers Section 99 and explaining that a "client's investigator or other agent" may contact represented parties notwithstanding Rule 4-4.2); *Farias Matos v. Bus. L. Grp., P.A.*, No. 6:18-CV-1105, 2021 WL 4312593, at *1 (M.D. Fla. Aug. 18, 2021) (defendant's "corporate representative" was permitted to contact plaintiff). Of course, some agents (lawyers, for example) may have an *independent* obligation under Rule 4-4.2 to refrain from *ex parte* communication with represented parties. *See supra* at 23-30 (explaining Peruvian counsel has no such independent obligation). But that obligation is not inherent

in the party-agent relationship. In other words, a party's agent is not bound by Rule 4-4.2 simply by virtue of his status as the party's agent.

Because Defendants are not bound by Rule 4-4.2, Peruvian counsel is not subject to Rule 4-4.2 simply because he is acting as Defendants' agent.

**2. Rule 4-4.2 does not apply to Peruvian counsel indirectly as an agent of counsel retained to represent Defendants in this civil litigation.**

As acknowledged above (at 21), the attorneys retained to represent Defendants in this appeal and in the district court proceedings are, of course, bound by Rule 4-4.2. That means they may not engage in any *ex parte* communications with Plaintiffs—either directly or indirectly through an agent. *See, e.g., Midwest Motor Sports v. Arctic Cat Sales, Inc.*, 347 F.3d 693, 698 (8th Cir. 2003); Mo. Rules of Pro. Conduct R. 4-4.2 cmt. 4 ("A lawyer may not make a communication prohibited by this Rule 4-4.2 through the acts of another."); ABA Comm. on Ethics & Pro. Resp., Formal Op. 396 (1995) ("Since a lawyer is barred under Rule 4.2 from communicating with a represented party about the subject matter of the representation, she may not circumvent

the Rule by sending an investigator to do on her behalf that which she is herself forbidden to do.”).

But Plaintiffs’ emergency motion never argued that Peruvian counsel was an agent of the U.S. lawyers retained to represent Defendants in this matter. *See* App.105-11; R. Doc. 607 at 1-7. The district court never made any such finding. And Defendants submitted a sworn affidavit attesting that Peruvian counsel “does not report to or take orders from the attorneys retained to represent Defendants in the above-captioned litigation, nor does he otherwise act as an agent of those attorneys.” App.205; R. Doc. 625-1 at 2. Accordingly, the court’s order cannot be sustained on the ground that Rule 4-4.2 applies to Peruvian counsel indirectly, as an agent of U.S. counsel.

Plaintiffs did not fix this fatal flaw by alleging “upon information and belief,” for the first time in their opposition to Defendants’ motion for a stay pending appeal, that Peruvian counsel was “acting pursuant to Defendants’ *and defense counsel’s* instructions.” App.218; R. Doc. 643, at 9 (emphasis added). Defendants emailed Plaintiffs’ counsel to request the factual basis for that allegation, as it is contradicted by Defendants’ sworn declaration. App.223-25; R. Doc. 646-1, at 1-2; R.

Doc. 646-2. Plaintiffs' counsel never responded. App.224; R. Doc. 646-1, at 2. And the district court never credited this assertion, or used it as a basis for either granting the motion or denying the stay.

## II. Missouri Rule Of Professional Conduct 4-4.2, If Applicable, Does Not Bar Peruvian Counsel From Attending The Witness Interviews In Question.

Even if Rule 4-4.2 applied to Peruvian counsel, it would not end the inquiry. The conduct enjoined by the district court was Peruvian counsel attending Peruvian law enforcement's witness interviews with current plaintiffs. That conduct simply does not violate Rule 4-4.2. This is so for two independent reasons. First, attending witness interviews does not constitute "communication" barred by Rule 4-4.2. § II.A. Second, Peruvian counsel's conduct is authorized by Peruvian law, and thus falls within an exception to Rule 4-4.2. § II.B.

### A. Attending witness interviews does not entail any "communication" prohibited by Rule 4-4.2.

The district court ordered that Peruvian counsel not be present "in the room" during witness interviews of current plaintiffs. App.196; R. Doc. 618, at 59:4-6. That command is wholly untethered to scope of Rule 4-4.2's bar, which addresses a lawyer's *communication* with a represented party.

As the relevant Missouri Bar Association Ethics Opinion explains: "The key word, in relation to Rule 4-4.2, is 'communicate.' Rule 4-4.2 does not prohibit an attorney from being in the presence of a represented party; it prohibits *communication* about the subject of the representation." Mo. Bar. Ass'n Advisory Ethics Op. No. 20030061 (emphasis added), https://tinyurl.com/29rrrmd6; *see also* North Carolina State Bar Ass'n 2003 Formal Ethics Op. 4, 2003 WL 24306943, at *2 ("[O]bservation is not a direct contact or communication with a represented person and does not violate Rule 4.2[]."). Accordingly, even if Rule 4-4.2 applies here and forbids Peruvian counsel from having *ex parte* communications with individual plaintiffs in this matter, the Rule does not prevent him from being in the room to passively observe witness interviews.

In the district court, there was some disagreement between the parties as to whether, as a matter of Peruvian law, a complainant (here, Peruvian counsel) is entitled to ask questions of the witness at the interview. *Compare* App.119; R. Doc. 607-1, at 3 (Plaintiffs' assertion that Peruvian counsel would "be able to question" witnesses at interviews), and Add. 11; R. Doc. 618, at 52:12-14 (similar); *with* R. Doc.

625, at 3 n.3 (Defendants' assertion that a Peruvian complainant cannot ask questions of witnesses), and Add. 14; R. Doc. 618, at 58:22-59:2 (similar). That disagreement is irrelevant here, because the court's order was not limited to barring Peruvian counsel from asking questions of witnesses. Instead, the court forbade Peruvian counsel from being "in the room when [witnesses] are interviewed." Add. 15; R. Doc. 618 at 59:4-6. That order has no basis in Rule 4-4.2.

### B. The claimed communications at issue here are "authorized by law" and thus permitted by Rule 4-4.2.

Under Rule 4-4.2, "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, *unless the lawyer … is authorized to do so by law*." (emphasis added). Among other things, the "authorized by law" exception permits "lawyers representing governmental entities" to engage in "investigative activities" either "directly or through investigative agents" "prior to the commencement of [formal] criminal or civil enforcement proceedings." Mo. Rules of Pro. Conduct 4-4.2 cmt. 5. Thus, attorneys (or their law enforcement agents) can have *ex parte* communication with the anticipated target of criminal or civil enforcement proceedings, or potential witnesses in those

proceedings, even if such individuals have already retained counsel. *See State v. Miller*, 600 N.W.2d 457, 467 (Minn. 1999) ("[L]egitimate investigative processes may go forward without violating MRPC 4.2 even when the target of the investigation is represented by counsel[.]"); *United States v. Plumley*, 207 F.3d 1086, 1095 (8th Cir. 2000) (collecting cases).

The specific example in comment five to Rule 4-4.2 reflects "appropriate and commonly accepted investigatory activity" in the American justice system, because the Rule has no extraterritorial application. *Miller*, 600 N.W.2d at 467; *see supra* at 20-23 (discussing limited geographic scope of Missouri Rules of Professional Conduct and choice-of-law rules). If the Rule is held to apply outside the United States, however, one must at least reason by analogy to the "commonly accepted investigatory activity" in other jurisdictions to see how the "authorized by law" exception applies.

In the Peruvian system, unlike in the American system, the complainant has a right to participate in the "investigative activities" of the government by attending law enforcement's witness interviews. *See supra* at 10. If the "authorized by law" exception to Rule 4-4.2 allows

lawyers with a special role in the American investigative process to have *ex parte* interviews with represented persons, it stands to reason that lawyers with a special role in the Peruvian investigative process would be equally permitted to have *ex parte* communications with represented persons under Rule 4-4.2. Lawyers representing the complainant have such a role in Peru; their attendance at witness interviews is specifically authorized by Peruvian law and is closely analogous to the *ex parte* investigative activity permitted by Rule 4-4.2 in the United States. Thus, applying comment five to the context of Peruvian investigations, Peruvian counsel's attendance at witness interviews does not violate Rule 4-4.2 because such attendance is an integral part of "appropriate and commonly accepted investigatory activity" in Peru and is thus "authorized by law." *Miller*, 600 N.W.2d at 467.

***

In sum, Rule 4-4.2 does not apply to Peruvian counsel's conduct in Peru representing Defendants in connection with a Peruvian law enforcement investigation. Even if the Rule applied, it would not bar Peruvian counsel's attendance at witness interviews with current

plaintiffs. Rule 4-4.2 was the sole basis offered by Plaintiffs, and cited by the district court, in support of the district court's order barring such attendance. That order is accordingly erroneous and must be vacated.

## CONCLUSION

For the foregoing reasons, this Court should vacate the district court's March 24, 2022 order granting Plaintiffs' emergency motion.

July 20, 2022

Respectfully submitted,

*/s/E. Joshua Rosenkranz*

E. Joshua Rosenkranz
Alyssa Barnard-Yanni
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000

Robert M. Loeb
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

*Counsel for Defendants-Appellants*

Edward L. Dowd, Jr.
Jeffrey Hoops
DOWD BENNETT LLP
7733 Forsyth Blvd
Suite 1900
St. Louis, MO 63105
(314) 889-7300

*Counsel for Defendant-Appellant The Renco Group, Inc.*

Thomas P. Berra, Jr.
Michael J. Hickey
LEWIS RICE LLC
600 Washington Avenue
Suite 2500
St. Louis, MO 63101
(314) 444-7600

*Counsel for Defendant-Appellant The Doe Run Resources Corporation*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 8,146 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook 14-point font.

This brief has been scanned for viruses pursuant to Eighth Circuit Local Rule 28A(h)(2) and is virus-free.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/E. Joshua Rosenkranz*
E. Joshua Rosenkranz
*Counsel for Defendants-Appellants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 20, 2022, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon counsel of record.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ E. Joshua Rosenkranz*
E. Joshua Rosenkranz
*Counsel for Defendants-Appellants*