**No. 22-1848**

---

IN THE

# United States Court of Appeals for the Eighth Circuit

---

CHRIS COLLINS, ET AL.,

*Plaintiffs-Appellees*,

*v.*

THE DOE RUN RESOURCES CORP., ET AL.,

*Defendants-Appellants*.

---

On Appeal from the United States District Court
for the Eastern District of Missouri
No. 4:15-cv-01704-RWS, Hon. Rodney W. Sippel

---

**BRIEF FOR PLAINTIFFS-APPELLEES**

---

Frank R. Rodriguez,
Paulino A. Nuñez
RODRIGUEZ TRAMONT +
NUÑEZ, P.A.
255 Alhambra Cir., Suite 1150
Coral Gables, FL 33134
(305) 350-2300

Hunter Shkolink
Paul J. Napoli
Patrick J. Lanciotti
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
(212) 397-1000

Kenneth Chesebro
230 Central Park S, 16th Floor
New York, NY 10019
(617) 895-6196

*Counsel for Plaintiffs-Appellees*

## SUMMARY OF THE CASE

This litigation, filed in 2015, was brought by more than 1,800 Peruvian citizens who allege that they were born with lead poisoning, caused by a lead mining and smelting complex in Peru. They seek damages for personal injury against defendants, which managed that facility from their corporate headquarters in St. Louis, Missouri.

Last fall, defendants came to the District Court with testimony from a Peru-based paralegal, who had previously worked in Peru for plaintiffs' counsel identifying potential clients. After arranging to be paid handsomely by defendants, he signed an affidavit alleging that the files of an undetermined number of plaintiffs are tainted by fraud.

Defendants sought sweeping discovery into this alleged fraud, which the District Court denied. It opted to test the allegations of fraud through scrutiny of only the 108 trial pool plaintiffs. On learning that defendants had hired a Peruvian attorney who planned to participate in *ex parte* interviews of other clients of plaintiffs' counsel (circumventing its discovery order), the District Court ordered defendants to desist. That order was well within the District Court's authority under the All Writs Act, 28 U.S.C. § 1651(a), and also under its inherent authority.

We welcome oral argument, if granted, but see no need for it.

## TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Nature of the litigation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Doe Run's unfair attack on District Court rulings not at issue* . . . . . . . . 3

*Doe Run's request for discovery into alleged fraud* . . . . . . . . . . . . . . . . . 6

*The District Court's limitation on discovery into alleged fraud* . . . . . . . 8

*Doe Run's efforts to circumvent discovery limitations* . . . . . . . . . . . . . . 10

1. In Peru . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2. In Florida . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

I. The District Court's Order Is Sustainable as a Proper Exercise of Its Authority Under the All Writs Act, Regardless of Whether Rule 4-4.2 is Implicated Here . . . . . . . . . 20

II. Rule 4-4.2 Provides Further Support for the District Court's Order, Because the Order Serves to Prevent Doe Run From Using *Any* Attorney to Engage in *Ex Parte* Contact With an Opposing Party . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## TABLE OF AUTHORITIES


**Cases** | **Page**

*Adams v. United States ex rel. McCann*, 317 U.S. 269 (1942) . . . . . . . 21

*Adkins v. Nestle Purina Petcare Co.*,
779 F.3d 481 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Canady v. Allstate Ins. Co.*, 282 F.3d 1005 (8th Cir. 2002) . . . . . . . . . . 23

*Chambers v. NASCO, Inc.* 501 U.S. 32 (1991) . . . . . . . . . . . . . . . 1, 30-31

*Dataphase Sys. v. C L Sys.*, 640 F.2d 109 (8th Cir. 1981) . . . . . . . . . . . 22

*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004) . . . . 22

*Liles v. Del Campo*, 350 F.3d 742 (8th Cir. 2003) . . . . . . . . . . . . . . . . . 23

*Phillips Beverage Co. v. Belvedere*, 204 F.3d 805 (8th Cir. 2000) . . 24-26

*Reuter v. Jax Ltd.*, 711 F.3d 918 (8th Cir. 2013) . . . . . . . . . . . . . . . . . . 20

*USCOC of Greater Mo., LLC v. County of Franklin*,
636 F.3d 927 (8th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. New York Telephone Co.*, 434 U.S. 159 (1977) . . *passim*

*United States v. Sager*, 743 F.2d 1261 (8th Cir. 1984) . . . . . . . . . . . . . 20

*Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1996) . . . . . . . . 25-27

*Zerger & Mauer LLP v. City of Greenwood*,
751 F.3d 928 (8th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**Statutes and Rules** **Page**

28 U.S.C. § 1292(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

All Writs Act, 28 U.S.C. § 1651(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Anti-Injunction Act, 28 U.S.C. § 2283 . . . . . . . . . . . . . . . . . . . . . 23, 25-26

Fla. Bar Code Prof. Resp. 4-3.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Missouri Rules of Professional Conduct, Rule 4-4.2 . 11-12, 19-20, 27-30

**Other Authority**

Sandra Day O'Connor, *The Judiciary Act of 1789 and the American Judicial Tradition*, 59 U. Cin. L. Rev. 1 (1990) . . . 20-21

## JURISDICTIONAL STATEMENT

Plaintiffs-appellees agree that the District Court had jurisdiction under 28 U.S.C. § 1331; that the notice of appeal was timely filed on April 20, 2022, appealing the District Court's order entered on March 24, 2022; and that this Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), which permits appeals from orders which have a substantial injunctive effect — as does the District Court's order, designed to prevent defendants-appellants from circumventing the District Court's previous orders limiting discovery, by utilizing a Peruvian lawyer as their cat's paw.

## STATEMENT OF THE ISSUE

Whether the District Court's order, entered to prevent defendants from undermining the limits it imposed on discovery, by paying a Peruvian-based lawyer to engage in *ex parte* contact with the clients of plaintiffs' counsel that would be unethical for its Missouri-based counsel of record to engage in, is sustainable under the All Writs Act, 28 U.S.C. § 1651(a), and also pursuant to the District Court's inherent authority.

**<u>Relevant Cases</u>**

*United States v. New York Telephone Co.*, 434 U.S. 159 (1977)

*Chambers v. NASCO, Inc.* 501 U.S. 32 (1991)

## STATEMENT OF THE CASE

### *Nature of the litigation*

Defendants are a Missouri-based corporation, and its affiliates (collectively, "Doe Run"),[1] which together comprise the second-largest lead producer in the world.[2] Since 1997 Doe Run has managed, from its headquarters in Saint Louis, Missouri,[3] a lead mining and smelting complex based in La Oroya, Peru which, due to that operation (located in the city center), has been classified as one of the ten most polluted cities in the world.[4] As of 2005, more than 99% of children born in La Oroya were being born afflicted with lead poisoning, according to a study by the Saint Louis University School of Public Health.[5]

---

[1] Complaint ¶¶ 4-14 (R. Doc. 1-6). There is no need to parse the specific corporate entities involved, in light of Judge Perry's veil-piercing and alter-ego ruling in related litigation, concluding that corporate forms were ignored in managing the Peruvian facility at issue. Memorandum and Order of Oct. 16, 2018, *A.O.A. v. Rennert*, Case. No. 4:11 CV 44 CDP (E. D. Mo.), R. Doc. 949, at 17-30.

[2] Complaint ¶ 4.

[3] Complaint ¶¶ 4, 16-31.

[4] Complaint ¶¶ 16, 21.

[5] Complaint ¶ 21.

Plaintiffs allege that "[a]t critical times including during gestation and their developmental years," due to Doe Run's wrongdoing they "have been exposed to damaging levels of lead and other toxic substances," and that their "damages and losses include, but are not limited to, physical and psychological injuries, learning and other permanent disabilities, weight loss, stunted growth, anemia, headaches, abdominal and other pain, mental anguish, emotional distress, the cost of medical, educational, and rehabilitation expenses, and other expenses of training and assistance, and loss of income and earning capacity."[6]

***Doe Run's unfair attack on District Court rulings not at issue***

Before discussing the discovery-related order narrowly at issue in this appeal, we briefly touch on Doe Run's Statement of the Case, which attacks two prior rulings of the District Court *not* at issue in this appeal — quite unfairly, we submit, as Doe Run has omitted necessary context.

First, Doe Run contends that "[t]he government of Peru has repeatedly objected to this litigation proceeding in the United States

---

[6] Complaint ¶ 1.

rather than Peru," and it complains that the District Court declined "to dismiss these cases on international comity grounds." Doe Run Br. at 4. Doe Run neglects to mention that in related litigation in the Eastern District of Missouri, Judge Perry rejected this international comity argument. In a detailed opinion, adopted by the District Court below,[7] Judge Perry noted that the position of the Peruvian governmental officials is ambiguous, and held that maintenance of the litigation in the United States raises no serious issue of international comity.[8]

---

[7] R. Doc. 296 at 2-7.

[8] Memorandum and Order of Oct. 16, 2018, note 1, *supra*, at 56-62. Judge Perry noted that "[t]he parties have submitted competing letters purporting to reflect the views of the Peruvian government," *id.* at 56, but concluded that these letters "are not persuasive either way regarding Peru's interest in this case," as they "not only contradict one another, but they were obtained by each side for the purpose of supporting their positions in this litigation. It appears to me that different Peruvian officials have taken different sides in this dispute, and none fully represents the position of the Peruvian government." *Id.* at 57-58. Adding to the sense that there was no clear, proactive opposition by the Peruvian government, Judge Perry was concerned that as to "the 2017 letter submitted by defendants," they "initially denied soliciting" it, and "only later corrected" this "initial misrepresentation to the Court." *Id.* at 58 & note 12.

In addition to holding that Doe Run was estopped from relitigating this issue, the District Court below independently rejected Doe Run's international comity argument. R. Doc. 296 at 8-18.

Doe Run also omits to mention that it appealed Judge Perry's decision to this Court — an appeal that was summarily dismissed by this Court,[9] as was Doe Run's appeal from Judge Sippel's separate ruling rejecting this same argument.[10]

Second, Doe Run represents that it "asked the district court to at least apply Peruvian law to the dispute" and that this request was "refused . . . ." Doe Run Br. at 5 (citing R. Doc. 255). In fact, the District Court was openly *receptive* to applying Peruvian law to this litigation. In its choice-of-law holding, the District Court explicitly found that "there is no conflict between Peruvian and Missouri law." R. Doc. 296 at 19; *see also id.* at 22-23 ("I conclude that the laws of Peru do not actually conflict in any significant, substantive way with Missouri law. When the legal principles are the same in both jurisdictions, there is no need to employ a choice-of-law analysis.").

The District Court did note that "if a conflict *were* present," Missouri law would control under "the most-significant-relationship

---

[9] Judgment, *Reid v. Doe Run Resources Corp.*, No. 18-3552 (8th Cir., June 4, 2019).

[10] Judgment, *Collins v. Doe Run Resources Corp.*, No. 19-1590 (8th Cir., July 2, 2019).

test," because the Peruvian mining and smelting operation was run by Missouri citizens, from Missouri corporate headquarters, and "Missouri certainly has an interest in deterring malfeasance by its domestic corporations and providing a place of redress for harm caused by its citizens." *Id.* at 26-27 (emphasis added).[11] But that is a far cry from Doe Run's carping (on a point not even germane to the issue on which it has appealed) that the District Court outright refused to apply Peruvian law in litigation brought by Peruvian plaintiffs injured in Peru.

***Doe Run's request for discovery into alleged fraud***

By fall, 2021, despite delays caused by the Covid-19 pandemic, the litigation was on track in the District Court, focused on discovery and trial preparation related to 120 trial pool plaintiffs.R. Doc. 540. Then, on October 21, 2021, Doe Run without prior warning came forward with a voluminous submission (filed under seal), Appellants' Appendix ("App.") 1-66; R. Doc. 542, alleging that it had uncovered evidence that

[11] Judge Perry likewise determined that the legal claims being asserted by plaintiffs in these cases do not entail any rejection of Peruvian law. Memorandum and Order of Oct. 16, 2018, note 1, *supra*, at 47-51. In particular, she concluded that "[d]efendants have failed to prove a true conflict exists between Missouri and Peruvian law. If the movant fails to prove foreign law with reasonable certainty, a district court should apply the law of the forum." *Id.* at 50.

an undetermined number of the more than 1,800 plaintiffs might not have properly authorized suit, and/or that documentation in some of plaintiffs' files might be inaccurate, due to fraud or other irregularities allegedly perpetrated by litigation staffers in Peru who worked between 2013 and 2016, charged with locating and processing potential plaintiffs.

This information was set forth in a report (summarized in Doe Run. Br. at 5-8) that had been prepared by a law firm hired by Doe Run, App. 5-25; R. Doc. 542-2, whose authors declined to vouch for the information by either entering an appearance (and thus be bound by the strictures of Fed. R. Civ. P. 11) or be sworn as witnesses and subjected to cross-examination regarding their investigation.[12] The authors'

---

[12] For example, at the initial hearing in which the report was addressed, when counsel for Doe Roe produced one of the report authors to speak about the report, the District Court asked whether he was being called as a witness: "I mean, it's my concern that I – that whoever speaks in this hearing be admitted in the case so that the traditional remedies of sanctions and other issues are available to the Court. And unless you're calling him as a witness, he cannot speak as counsel until he enters his appearance in the case." App. 69-70; R. Doc. 553 at 5-6. Faced with this choice, the report author chose a third course: "I'm going to stay on mute." App. 70; R. Doc. 553 at 6.

Plaintiffs' counsel took issue with the authors of the report standing silent, urging that "we need depositions of" the "lawyers and the folks who were involved in preparing the report." App. 84; R. Doc. 553 at 20. *See also* R. Doc. 554 at 30 (District Court's observation that

silence left unanswered concerns that much of their report was based on either hearsay or on a principal witness whose credibility was open to serious question in light of substantial funds the impecunious witness had been paid by Doe Run contemporaneous with him signing his affidavit. App. 168-71; R. Doc. 618 at 31-34.

***The District Court's limitation on discovery into alleged fraud***

On January 5, 2022, Doe Run filed requests for sweeping discovery into the files of undersigned counsel, which it claimed was necessary to either prove or disprove the allegations of fraud contained in the report. R. Docs. 558, 559, 560. Plaintiffs opposed these requests as generally without merit, *e.g.*, R. Docs. 574, 575, and proposed instead a means by which careful scrutiny of the trial pool plaintiffs (by then, narrowed to 108 in total) could be used to test whether the alleged fraud had any actual impact on the litigation. R. Doc. 563 (a proposal opposed by Doe Run, *see* R. Doc. 571). Plaintiffs also moved for protective orders to prohibit Doe Run from engaging in any discovery efforts other than

---

the report authors "refused to be sworn and testify"); App. 167-68; R. Doc. 618 at 30-31 (argument of plaintiffs' counsel that "at a minimum, . . . the plaintiffs should be able to cross-examine and examine the creator of the . . . report"). Plaintiffs pursued discovery into the creation of the report, R. Docs. 588, 589, which Doe Run adamantly opposed. R. Docs. 598, 599.

the targeted discovery proposed by plaintiffs. R. Docs. 592, 593; App. 105-39; R. Doc. 607.

At a hearing held March 24, the District Court accepted plaintiffs' proposal for targeted discovery, and granted the protective orders they sought. It concluded that because there was no allegation by Doe Run that any of the plaintiffs, themselves, had engaged in fraud (i.e., only former litigation staffers were under suspicion), its allegations should not be permitted to disrupt plaintiffs' progress toward trial.[13] Doe Run would have a sufficient opportunity to test its fraud allegations through closer scrutiny of the 108 trial pool plaintiffs.[14] Thus, the District Court adopted plaintiffs' proposal for vetting each of the 108 plaintiffs in Peru, to verify that each indeed wished to proceed with the litigation, and for ensuring that Doe Run would be provided with authorization from each

---

[13] App. 143-44; R. Doc. 618 at 6-7 ("I want to keep my eye on the claims by the individuals. * * * For example, even if counsel may have stepped over the line representing an individual plaintiff, unless the individual plaintiff has participated in that conduct, that doesn't mean their claim necessarily goes away.").

[14] App. 144; R. Doc. 618 at 7 ("we've got a trial pool of plaintiffs; let's explore through discovery what the nature and circumstances of their participation or how they came to participate in this case; and let's find it. And we will deal with it."); App. 145; R. Doc. 618 at 8 ("So we have the issue of how do we explore the allegations of the – within the trial pool plaintiffs while we also work towards a trial date.').

plaintiff to pull records from the original sources in Peru, to verify that the information in each case file was accurate, and not tainted by any fraud.[15] These rulings were embodied in the District Court's Order entered on March 24. Appellants' Addendum ("Add.") 1-2; R. Doc. 613.

***Doe Run's efforts to circumvent discovery limitations***

**1. In Peru**.

Prior to the March 24 hearing in which the District Court sharply limited Doe Run's latitude to engage in discovery into the matters covered by the report, counsel for plaintiffs became concerned that Doe Run had hired a lawyer in Peru to be present in *ex parte* interviews of their clients, conducted by Peruvian authorities looking into Doe Run's allegations that the fraud alleged in the report was criminal in nature, which plaintiffs' counsel brought an emergency order to prevent. App.

---

[15] App. 190; R. Doc. 618 at 53 ("We are going to pursue the verification process proposed by the plaintiff and we are going to stay focused on the 108 trial pool plaintiffs and see where that takes us."); App. 191; R. Doc. 618 at 54 ("You are going to get to test the plaintiff fact sheets when you do discovery of the trial pool plaintiffs. There could be explanations or there may not be. But you are going to get to find out if the changes are a result of something nefarious or a simple mistake. But that's how we are going to have to stay on track to pursue this case."); App. 194; R. Doc. 618 at 57 ("Well, I'm not going to prejudge anything, but certainly to the extent discovery is propounded to people outside the 108, the protective order is granted.").

108-12; R. Doc. 607 at 4-8.

Plaintiffs' argument was that Doe Run had retained the Peruvian lawyer to engage in discovery related to alleged fraud on the District Court which its counsel in this litigation would be barred from conducting, giving the bar on *ex parte* contacts with clients imposed by Rule 4-4.2 of the Missouri Rules of Professional Conduct. *Id.* This, the District Court concluded during the hearing, was so obviously impermissible that there was no need to wait for the issue to be fully briefed. At the conclusion of the hearing, the District Court made clear that although Doe Run was free to have its Peruvian counsel engage in *ex parte* contact with *former* clients of plaintiffs' counsel, no contact with *current* clients would be permitted.[16] This oral ruling was then entered as a formal order, Add.2; R. Doc. 613 at 2, from which Doe Run has now appealed.

---

[16] App. 194; R. Doc. 618 at 57 ("To the extent that there are, advertently or inadvertently, people who are current plaintiffs and clients, obviously your counsel and any of your agents cannot participate in their interviews. That would be inappropriate *ex parte* communication."). App. 195; R. Doc. 618 at 58 ("Obviously, you know, you can't have *ex parte* communication with his client."); App. 196; R. Doc. 618 at 59 ("If they are an active client, I don't want them in the room when they are interviewed by prosecutors or law enforcement.").

Following entry of the order, Doe Run filed a brief further articulating its opposition to plaintiffs' motion, App. 204-05; R. Doc. 625, and an application for a stay pending appeal. R. Doc. 628. The District Court responded by explaining as follows the necessity for its order barring Doe Run from paying a Peruvian lawyer to participate in *ex parte* interviews with the clients of plaintiffs' counsel:

> Rule 4-4.2 of the Rules of Professional Conduct adopted by the Supreme Court of Missouri bars a lawyer from communicating about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter. Clearly Defendants' counsel in this matter (whether here or in Peru) are bound by this Rule. Plaintiffs assert that Defendants' counsel in Peru who initiated the criminal complaint (and who Defendants assert is not a lawyer working on this case) is seeking to circumvent Rule 4-4.2 by impermissibly questioning (or guiding the questioning) of current plaintiffs through the guise of a separate criminal proceeding.
>
> Defendants counter that they have a right to hire counsel in Peru to start a criminal investigation into the discovery process in this case and that the investigation is a wholly separate and independent matter where plaintiffs are being questioned about possible criminal activity. Moreover, Defendants argue, as a matter of comity, the procedures to conduct the investigation under Peruvian law should not be interfered with by this Court imposing Missouri Rules of Professional Conduct.
>
> I agree with Plaintiffs. The criminal investigation is not aimed at a separate and independent activity like a robbery or arson. Defendants' initiation of a criminal

> investigation is directed at issues that are inextricably intertwined with the discovery issues before this Court in this matter. The information Defendants' Peruvian counsel gains from their participation in interviewing plaintiffs in this investigation (either by directly asking plaintiffs questions or by providing questions to the prosecutor and attending plaintiffs' questioning) will be provided to Defendants. This same information could not be obtained by Defendants' counsel in this case. As a result, I granted Plaintiffs' emergency motion for a protective order to prevent Defendants from using a criminal investigation to have their lawyers communicate with current plaintiffs about the subject of this lawsuit. Defendants have appealed my ruling. Defendants have moved for me to stay my order pending the appeal. For the reasons stated above I will deny that motion.

Add. 18-19; R. Doc. 650 at 3-4.

**2. In Florida**.

Remarkably, Peru is only the first of three venues in which Doe Run has sought to circumvent the limitations imposed by the District Court regarding discovery into its allegations of fraud. Dissatisfied with the District Court's rulings restricting it to scrutiny of the 108 trial pool plaintiffs, barring it from discovery into the files of plaintiffs' counsel, and barring it from circumventing its discovery orders through a lawyer retained in Peru to engage in *ex parte* contacts with plaintiffs, Doe Run subsequently filed actions in both Florida federal court and Florida state court seeking the discovery denied by the District Court.

Although the legitimacy of these flanking maneuvers is not currently before this Court — as plaintiffs' motion for an anti-suit injunction is currently pending in the District Court, R. Doc. 671 — we briefly describe the Florida actions, because we submit that the resolution of this appeal should be crafted with an eye toward ensuring that the District Court will retain sufficient authority to respond appropriately to the Florida actions filed by Doe Run.

On April 29, 2022, Doe Run filed a lawsuit in Florida state court, seeking to have that court rule that there was fraud perpetrated on the District Court, which it urged the Florida state court to rectify, by allowing extensive discovery into the files of plaintiffs' counsel. The lawsuit was filed against Florida lawyers who had previously been involved in identifying possible plaintiffs in this litigation, asserting a malicious prosecution claim based on their involvement in the alleged fraud. R. Doc. 672-1. The complaint explicitly seeks to remedy an alleged "fraud perpetrated on . . . the U.S. District Court for the Eastern District of Missouri . . . ."[17]

---

[17] R. Doc. 672-1, Complaint ¶ 26. The complaint alleges that the Florida lawyers are liable for damages purportedly suffered by Doe Run due to the "fabrication of evidence that was used to support the claims of a substantial number of the Peruvian Plaintiffs in the Missouri

Doe Run was not content to look merely to a Florida state court for an opportunity to delve into the confidential files of plaintiffs' counsel, discovery denied by the District Court. On April 12, 2022, in the U.S. District Court for the Southern District of Florida, it filed an *Ex Parte* Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782, seeking to depose one of the Florida lawyers targeted in the Florida state court action. R. Doc. 672-3. Nominally, this was filed to obtain information in support of the criminal investigation being pursued by the Peruvian authorities. But Doe Run was explicit that its main focus was on the lawsuit ongoing before the District Court: "A

---

Litigation." *Id.*, ¶ 58. Additionally, because 71 of the plaintiffs before the District Court were voluntarily dismissed with prejudice, Doe Run alleges that "[t]here was no probable cause to file and/or continue to prosecute the claims of these 71 dismissed Peruvian Plaintiffs." *Id.,* ¶ 61.

In an early filing in the case, Doe Run has outlined that it projects that this Florida state court litigation will be "a massive undertaking" which "will likely require in-depth motion practice," as Doe Run "may depose the individual seventy-one Peruvian plaintiffs (or their guardians) whose claims were voluntarily dismissed with prejudice, as well as attorneys who represented them." R. Doc. 672-2 (motion to transfer the case to the Complex Business Litigation Section under Florida Rule 1.201, dated June 21, 2022) at 6. In addition to Doe Run seeking to depose undersigned counsel, who are currently handling the case in the Eastern District of Missouri, it contends that in the Florida state court proceeding, "[f]iles kept by the plaintiffs' attorneys on each of those [71] plaintiffs will be subject to discovery . . . ." *Id.*

large group of consolidated personal injury claims brought by Peruvian citizens in a federal court in Missouri has now been revealed to be riddled with fraud," it contended. *Id.* at 1.

Doe Run's aim, it alerted the Florida federal court, was to root out "sham claimants" who are among the plaintiffs "in the United States District Court for the Eastern District of Missouri . . . ." *Id.* at 2. It specifically sought discovery of information involving meetings with plaintiffs' counsel in this litigation "in which instructions were given or discussed for how to identify or enroll potential plaintiffs for the Missouri lawsuits." R. Doc. 672-4, at 10, ¶ 18.

However, in so doing, Doe Run failed to alert the Florida federal judge that the federal judge overseeing the case in Missouri, which it sought to protect from alleged fraud — Judge Sippel — had already denied Doe Run the very discovery it was seeking. Evidently unaware that Doe Run was seeking to use the Florida federal court to circumvent existing Missouri federal court discovery orders, Judge Lenard authorized the requested discovery, in an *ex parte* order issued on June 8, 2022. R. Docs. 672-4, 672-5. *Compare* Fla. Bar Code Prof. Resp. 4-3.3 (Candor Toward the Tribunal), *Comment, Ex parte proceedings*

(emphasizing duty of lawyer proceeding ex parte "to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision").

In response, on July 13, 2022, plaintiffs moved in the District Court for an anti-suit injunction to prevent Doe Run from using the Florida actions to circumvent the District Court's existing discovery orders. R. Docs. 671, 672. On August 10, Doe Run filed its opposition papers in the District Court, R. Doc. 694, and on August 22 plaintiffs filed their reply. R. Doc. 696.

Although Judge Sippel has not yet ruled on plaintiffs' motion for an anti-suit injunction, at a recent status hearing he made clear that both he and Judge Perry (overseeing the related litigation) have concerns about the Florida actions filed by Doe Run, warning that Doe Run has "a big stake in this because there will be consequences here if . . . the attorney-client privilege in this case was breached by conduct in other courts . . . depending on what disclosures were made to those courts about the conduct of these proceedings and my promise to you that, if there was fraud, we'd find it" – so that Doe Run "proceeds with

that deposition at [its] peril."[18]

## SUMMARY OF ARGUMENT

The District Court's order prohibiting Doe Run from directing a lawyer in Peru to participate in *ex parte* interviews with active clients of undersigned plaintiffs' counsel — an order we concede has injunctive effect, permitting an immediate appeal — is sustainable on two grounds.

---

[18] R. Doc. 679 at 60-61. Before warning Doe Run of the possible consequences of pursuing the discovery authorized by the Florida federal court, Judge Sippel explained to its counsel: "Of some concern to the Court is the non-Missouri litigation that has cropped up" which, "by your own admission, has the potential to invade the attorney-client privilege." *Id.* at 57. He indicated:

> I've talked to Judge Perry. Judge Perry and I are going to set a joint hearing because this affects her case and my case.
>
> * * *
>
> [I]t's of great concern if the attorney-client privilege is invaded in her cases as well as my case.
>
> * * *
>
> There's great concern about the discovery that may go forward in that case, and not the least of which is I did tell you we would get — if there's fraud in these cases, we will get to it in this courtroom.
>
> And to ask other judges to interfere in these cases to ferret out the fraud is — causes concern. That's why Judge Perry and I will conduct a joint hearing.

*Id.* at 58-59.

First, even setting aside the matter of legal ethics, because a principal aim of Doe Run's efforts in Peru is to engage in discovery seeking to uncover evidence of alleged fraud that might have tainted the proceedings below, the District Court's order was a permissible exercise of its authority under the All Writs Act, 28 U.S.C. § 1651(a), to prevent the frustration of its earlier orders limiting the scope of discovery.

Second, the rationale for intervention here is even stronger given the legal ethics issue. The District Court was rightly concerned that Doe Run had retained a lawyer in Peru to engage in *ex parte* contact with plaintiffs in this litigation of the sort prohibited by Rule 4-4.2 of the Missouri Rules of Professional Conduct. Although Rule 4-4.2 may not literally apply here, the District Court plainly had authority to prevent Doe Run from circumventing Rule 4-4.2 through a "cat's paw" tactic.

## ARGUMENT

This Court reviews judgments, not opinions, and therefore the District Court's order prohibiting Doe Run from circumventing its discovery orders, by dispatching Peruvian counsel to engage in *ex parte* contacts with plaintiffs in this litigation, should be affirmed as long as

the discretionary judgment made by the District Court is permitted by applicable law, even if the District Court did not discuss the specifics of applicable law. *E.g.*, *United States v. Sager*, 743 F.2d 1261, 1263 n.4 (8th Cir. 1984); *Reuter v. Jax Ltd.*, 711 F.3d 918, 922 (8th Cir. 2013).

Here, the judgment below is sustainable on two grounds. First, under the District Court's authority to prevent frustration of its discovery orders, pursuant to the All Writs Act, 28 U.S.C. § 1651(a). And second, based on the District Court's legitimate need to prevent Doe Run from evading the strictures of Rule 4-4.2 of the Missouri Rules of Professional Conduct by a "cat's paw" tactic of retaining Peruvian counsel to obtain discovery to benefit Doe Run in this case in a manner that would clearly be unethical for Doe Run's counsel of record in this case to carry out.

## I. The District Court's Order Is Sustainable as a Proper Exercise of Its Authority Under the All Writs Act, Regardless of Whether Rule 4-4.2 is Implicated Here

The All Writs Act was a central component of the Judiciary Act of 1789, ch. 20, § 14, 1 Stat. 73, 81-82, which has been described by Justice O'Connor as "the last of the triad of founding documents, along with the Declaration of Independence and the Constitution itself." Sandra Day

O'Connor, *The Judiciary Act of 1789 and the American Judicial Tradition*, 59 U. Cin. L. Rev. 1, 3 (1990). Section 14, which became known as the "all writs" provision, contains "[t]he most expansive and open-ended language" in the Judiciary Act. The Act allows a federal court to "avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 273 (1942).

The All Writs Act, now codified at 28 U.S.C. § 1651(a), authorizes a federal court "to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Telephone Co.*, 434 U.S. 159, 172 (1977). It follows that in deciding whether to issue an injunction to prevent frustration of a previous order, the relevant factors to be considered by federal judges, as directed by Congress, are those listed in the text of Section 1651(a): whether injunctions are "[1] necessary or appropriate [2] in aid of their respective jurisdiction and [3] agreeable to the usages and principles of law."

Other factors that have been articulated by courts sitting in equity in contexts where there is no controlling text, such as the four-part test for the issuance of a preliminary injunction to preserve the status quo, set out in decisions such as *Dataphase Sys. v. C L Sys.*, 640 F.2d 109, 113 (8th Cir. 1981), are inapplicable to requests for an anti-suit injunction which draw on the principle applied in *New York Telephone*. As the Eleventh Circuit noted in *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004), in *New York Telephone* the Supreme Court affirmed the grant of an injunction in that case "without regard" to the four factors for issuing a "traditional" injunction that is predicated on the moving party's underlying substantive cause of action. *Id.* at 1100-01. *See also id.* at 1100 ("The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because the historical scope of a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns."); *id.* at 1097 (contrasting a party's request for an anti-suit injunction with "a traditional injunction," which "is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed"); *id.* at 1102 (observing that in many cases involving

All Writs Act injunctions, "it is unclear how those traditional standards [for evaluating injunctions] would even be applicable").

We acknowledge that one decision of this Court has treated the *Dataphase* factors as relevant to an injunction sought under the All Writs Act, but that case involved not an injunction sought under *New York Telephone* to prevent frustration of a court's previous order, but instead involved "the relitigation exception to the Anti-Injunction Act," as to which this Court held the *Dataphase* factors could be meaningfully applied. *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1020 (8th Cir. 2002). In subsequent cases, this Court has upheld injunctions under the All Writs Act (and even ordered that one be issued) without referencing any of the *Dataphase* factors. *E.g.*, *Liles v. Del Campo*, 350 F.3d 742, 746 (8th Cir. 2003) (upholding anti-suit injunction against litigation in other federal courts, citing *New York Telephone*); *USCOC of Greater Mo., LLC v. County of Franklin*, 636 F.3d 927, 932 (8th Cir. 2011) (directing "district court to enjoin any collateral attacks or any other such action that would frustrate the instant order").

As the District Court made clear, its order barring Doe Run from tasking a Peruvian lawyer to participate in *ex parte* interviews of

plaintiffs in this litigation is, in effect, an anti-suit injunction, as Doe Run itself has agreed in an earlier filing in this appeal[19] – it was issued to prevent frustration of the District Court's earlier orders channeling discovery related to Doe Run's fraud allegations, to focus solely on the 108 trial pool plaintiffs. R. Doc. 650 at 3-4. Therefore, the legitimacy of the order is appropriately measured by reference to the All Writs Act.

The good sense underlying the District Court's prohibition on this attempted end run by Doe Run is illustrated by this Court's decision in *Phillips Beverage Co. v. Belvedere*, 204 F.3d 805 (8th Cir. 2000), which applied the *New York Telephone* doctrine in upholding the authority of a district court to prevent litigants from circumventing adverse rulings. The plaintiff in that case, a manufacturer of distinctive bottles, was denied injunctive relief against a Polish distillery which it alleged was counterfeiting its bottles. Having lost in district court, it "then attempted to make an end run around" that ruling by getting the U.S. Customs Service to detain the shipments. *Id.* at 806. The district court

---

[19] Defendants'-Appellants' Opposition to Motion to Dismiss Appeal for Lack of Jurisdiction, June 24, 2022, at 8 ("The district court's order here enjoining Peruvian counsel's participation in law enforcement interviews in Peru is instead 'closely analogous' to 'an anti-suit injunction.'") (quoting *Murphy Oil USA, Inc. v. SR Int'l Bus. Ins. Co.*, No. 07-CV-1071, 2007 WL 2752366, at *5 (W.D. Ark. Sept. 20, 2007)).

enjoined this effort "asking Customs to do what the district court would not," which ths Court affirmed as within the discretion of the district court. *Id.* (citing *New York Telephone*, 434 U.S. at 172).

One of the decisions cited approvingly in *Phillips Beverage*, concerning the authority of a district court to protect the integrity of its earlier orders and prevent litigants from frustrating them, is the Seventh Circuit's decision in *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1996). There the court held that where a district court has denied a party discovery on a particular topic, it may enforce that ruling, and maintain control over the litigation, by enjoining that party from seeking to obtain the same discovery via a state-court action, and thereby "protect the integrity of a discovery order." *Id.* at 1202.

In *Winkler*, plaintiffs involved in nationwide MDL litigation sought discovery from the district court of a document contained in the files of the former lead plaintiffs' MDL counsel. After discovery was denied, they sought to use state-court litigation to obtain the document, but the district court enjoined them from doing so. *Id.* at 1200. The Seventh Circuit held that in principle, such an injunction is sustainable under the All Writs Act (and found it posed no conflict with the

Anti-Injunction Act, 28 U.S.C. § 2283), concluding that "the district court quite reasonably believed that the plaintiffs were resorting to the state courts for the specific purpose of evading its ruling denying discovery" of the document. *Id.* at 1202. By issuing the injunction, the Seventh Circuit observed, the district court helped "ensur[e] that litigants use discovery properly as an evidence gathering tool, and not as a weapon." *Id.* It concluded: "Where a litigant's success in a parallel state court action would make a nullity of the district court's ruling, and render ineffective its efforts effectively to manage the complex litigation at hand, injunctive relief is proper." *Id.* That conclusion perfectly fits this case.

Although, after setting out this analysis, the Seventh Circuit ultimately vacated the injunction in that case on narrow factual grounds — concluding that its "broad language swe[pt] too many people within its interdict" and that the district court had failed "to make a thorough factual inquiry" into the discovery details, *id.* at 1203-04 — the fundamental legal holding in *Winkler*, cited approvingly in *Phillips Beverage*, 204 F.3d at 806, is that the Anti-Injunction Act is no obstacle to an All Writs Act injunction

designed to prevent federal court litigants from engaging in litigation activity which seeks to circumvent discovery orders. In *Adkins v. Nestle Purina Petcare Co.*, 779 F.3d 481 (7th Cir. 2015) (Easterbrook, J.), the Seventh Circuit reaffirmed this central holding of *Winkler*, "that the 'aid of jurisdiction' clause may be invoked when an inconsistent decision by a state court would 'render the exercise of the federal court's jurisdiction nugatory,'" and it noted that "*Winkler* itself entailed incompatible state and federal orders about discovery management." *Id.* at 485 (quoting *Winkler*, 101 F.3d at 1202).

## II. Rule 4-4.2 Provides Further Support for the District Court's Order, Because the Order Serves to Prevent Doe Run From Using *Any* Attorney to Engage in *Ex Parte* Contact With an Opposing Party

The District Court's reliance on Rule 4-4.2 of the Missouri Rules of Professional Conduct further supports its protective order. After reviewing Doe Run's arguments concerning the rule, in its written opinion (see pp. 12-13, *supra*), the District Court articulated its reasoning in three steps, only one of which Doe Roe contests.

First, Rule 4-4.2 "bars a lawyer from communicating about the subject of the representation with a person the lawyer knows to be

represented by another lawyer in the matter." Add. 18; R. Doc. 650 at 3. Doe Run does not dispute this point.

Second, if allowed to attend interviews, the lawyer in Peru would be in a position to "communicate," within the meaning of the rule, with plaintiffs who are being represented in this litigation by undersigned counsel, "by impermissibly questioning (or guiding the questioning) of current plaintiffs through the guise of a separate criminal proceeding." *Id.* Doe Run, in the end, is unable to dispute this point, too.[20]

Third, "[c]learly Defendants' counsel in this matter (whether here or in Peru) are bound by this Rule." *Id.* On this point the District Court rejected Doe Run's argument that Rule 4-4.2 is inapplicable because the Peruvian investigation is supposedly "a wholly separate and independent matter"; instead, it held that Doe Run had initiated "a

---

[20] In the District Court, as in this Court, Doe Run suggested that because the Peruvian lawyer apparently does not have the right to ask questions during interviews conducted by the Peruvian authorities, he would not be in a position to "communicate" with plaintiffs. Doe Run Br. at 35-37. The District Court rejected this argument, given the risk that if the Peruvian lawyer were in the room, he would be in a position to communicate indirectly with plaintiffs. Add. 18; R. Doc. 650 at 3 n.1 ("Defendants respond that the complainant (their counsel in Peru) is not allowed to ask questions of witnesses 'directly.' This assertion implies the pregnant negative that counsel may be able to provide questions to the prosecutor and thereby ask questions indirectly.").

criminal investigation . . . directed at issues that are inextricably intertwined with the discovery issues before this Court in this matter." *Id.* at 3-4 (Add. 18-19). Because information derived from the investigation would be provided to Doe Run, which it could then use in this litigation — information that "could not be obtained by Defendants' counsel in this case" — it logically followed that Doe Run had to be prohibited from using the Peruvian lawyer to circumvent the restrictions imposed by Rule 4-4.2 on Doe Run's Missouri counsel. *Id.* at 4 (Add. 19).

Doe Run is correct, of course, that it is plausible to read Rule 4-4.2 as not *literally* applying to the Peruvian lawyer, because he is not providing legal services *in* Missouri, Doe Run Br. at 20-23; he was not retained to represent Doe Run specifically in the civil lawsuit pending before the District Court, *id.* at 23-31; he is not an agent of Doe Run's counsel of record in this case, *id.* at 33-35; and his status as an agent of Doe Run is irrelevant, because Doe Run itself is a party, not a lawyer to which the text of Rule 4-4.2 applies. *Id.* at 31-33.

But such flyspecking fails to confront the essential point: as the District Court quickly grasped during the initial hearing on this matter,

without the need for briefing, and later reaffirmed after full briefing, Doe Run simply cannot be permitted to deploy foreign counsel to obtain information through *ex parte* interviews of plaintiffs, to use against them in this litigation, in a manner that would violate the ethics rules applicable to its Missouri counsel. If Doe Run's argument were accepted, it would have free rein to use a Peruvian lawyer as its "cat's paw,"[21] to achieve the very objective that the District Court has prohibited in discovery orders imposed on its Missouri counsel.

The core purpose of Rule 4-4.2 renders any such tactic unacceptable, and Doe Run's effort to exploit various interstices in the language of the rule to legitimate its "cat's paw" tactic is unavailing given the District Court's authority under the All Writs Act, which is worded capaciously enough to permit federal judges to thwart such machinations, as well as the District Court's inherent authority to manage the case before it even where a party's conduct falls outside the language of a particular statute or rule. *E.g.*, *Chambers v. NASCO, Inc.*

---

[21]"A 'cat's paw' is a 'dupe' who is 'used by another to accomplish his purposes." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) (quoting *Webster's New International Dictionary* 425 (2d ed. 1934)). *See also* 2 *Oxford English Dictionary* 992 (2d ed. 1989) ("A person used as a tool by another to accomplish a purpose"); https://en.wikipedia.org/wiki/The_Monkey_and_the_Cat.

501 U.S. 32, 43 (1991); *Zerger & Mauer LLP v. City of Greenwood*, 751 F.3d 928, 930-31 (8th Cir. 2014).

## CONCLUSION

For all the reasons stated, the District Court's order prohibiting Doe Run from engaging a Peruvian lawyer to be present during *ex parte* interviews of the current clients of undersigned counsel should be affirmed.

September 8, 2022

Respectfully submitted,

*/s/ Hunter Shkolink*
Hunter Shkolink
Paul J. Napoli
Patrick J. Lanciotti
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
(212) 397-1000

Kenneth Chesebro
230 Central Park S, 16th Floor
New York, NY 10019
(617) 895-6196

Frank R. Rodriguez,
Paulino A. Nuñez
RODRIGUEZ TRAMONT + NUÑEZ, P.A.
255 Alhambra Cir., Suite 1150
Coral Gables, FL 33134
(305) 350-2300

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 7,160 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Century Schoolbook 14-point font.

This brief has been scanned for viruses pursuant to Eighth Circuit Local Rule 28A(h)(2) and is virus-free.

*/s/ Kenneth Chesebro*
Kenneth Chesebro
*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 8, 2022, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Patrick J. Lanciotti*
Patrick J. Lanciotti
*Counsel for Plaintiffs-Appellees*